ROBERT ATCHESON, Appellant, *v.* MICHAEL MALLON, Respondent.

|  |  |
|---|---|
| 43 | 147 |
| e173 | ¹371 |

Where a contract for the performance of any public service or work is to be awarded to the bidder therefor offering terms most favorable to the public, any agreement between parties designing to make bids, tending, either directly or indirectly, to restrain or lessen rivalry and competition between them, is void as against public policy, even although it may not appear that such agreement did really produce any result detrimental to the public interest.

Accordingly, where a board of auditors of a town were, by statute, authorized to receive sealed proposals for the collection of the taxes to be

assessed in the town, and to award the collection of the taxes to the person who shall propose to collect the same on terms most favorable to the town.—*Held*, that an agreement between two persons, each sending in distinct sealed proposals, that, if the collection should be awarded to either, both should share equally in the profits, if any, and contribute equally to the losses, was against public policy, and void.

(Argued November 25th, and decided November 29th, 1870.)

APPEAL from an order of the late General Term of the Supreme Court in the fourth judicial district, reversing the judgment and granting a new trial, on appeal by the defendant, from a judgment rendered on the verdict of a jury.

The action was for an accounting, and the payment to the plaintiff of his share of the profits realized by the defendant on a certain contract with the town of Oswegatchie, St. Lawrence county, for the collection of the taxes assessed upon that town.

By an act of the legislature passed March 9th, 1866 (Sess. Laws of 1866, vol. 1, p. 244), the board of town auditors of that town were authorized to receive sealed proposals for the collection of the taxes of that town, and award the collection thereof to the person offering terms most favorable to the town.

The board accordingly advertised, and, among others, both the plaintiff and the defendant put in proposals. Their proposals were seen by both the parties, before they were sent in, but it did not appear that any change was made in either of them, in consequence of the knowledge by one bidder of the proposal of the other.

At the time the proposals were sent in to the board of auditors, the plaintiff and defendant agreed that, if either obtained the award of the collection of taxes, both should share equally in the profits and be liable to an equal share of the losses.

The contract was awarded to the defendant, who went on under it and collected the taxes at the rates stated in his proposal.

Evidence was given upon the trial tending to show that the net profits of the defendant upon such collection were over $400, and the jury found a verdict for the plaintiff for one-half thereof, $200.

*Samuel Hand* (D. Magone, Jr., with him), for the appellant.

*Nathaniel C. Moak* (B. H. Vary with him), for the respondent, to the point that the agreement defeated the policy of the act of 1866, and was therefore void, cited Comyn. on Contr., 30; 1 Fonbl. Eq. L., 1 Ch. 4, § 4; 1 Story's Eq., § 296; 4 Hill, 424; *Armstrong* v. *Toler* (11 Wheat., 258); *Craig* v. *Missouri* (4 Peters, 410); *Sharp* v. *Teese* (4 Halst., 252); *Barth* v. *Coleman* (4 Peters, 184); *Gulick* v. *Ward* (5 Halstead, 78); *Doolin* v. *Ward* (6 Johns., 194); *Wilber* v. *Hane* (8 Johns., 444); *Payne* v. *Eden* (3 Cai., 212); *Wait* v. *Harper* (3 Johns., 386); *Bruce* v. *Lee* (4 Johns., 410); *Yeomans* v. *Chatterton* (9 Johns., 295); *Tuxbury* v. *Miller* (19 Johns., 311); 3 Con., 299. It was void as being a contract to aid in procuring the appointment of another to an office. (*Snayze* v. *Hull*, 3 Halst., 54; *Marshall* v. *Baltimore R. R. Co.*, 16 How. U. S., 314; *Tappan* v. *Brown*, 9 Wend., 175; *Gray* v. *Hook*, 4 N. Y., 449; *Carlton* v. *Whicher*, 5 N. H., 196; 2 N. H., 57; 6 N. H., 183.)

FOLGER, J.    It is not necessary, for the determination of this case, to inquire whether the effect of the agreement between the parties was in fact detrimental to the town of Oswegatchie. The true inquiry is, is it the natural tendency of such an agreement to injuriously influence the public interests? The rule is, that agreements, which in their necessary operation upon the action of the parties to them, tend to restrain their natural rivalry and competition, and thus to result in the disadvantage of the public, or of third parties, are against the principles of sound public policy, and are void. (*Gulick* v. *Bailey*, 5 Halst., 87; *Mills* v. *Mills*, 40 N. Y.,

545–6.) The object of the act of 1866 is plain. It was to reduce to the tax-payers of the town of Oswegatchie the expense of the collection of taxes upon them, either directly, by securing the collection at a lower rate of compensation therefor, or indirectly, by the payment into the town treasury of a bonus in money, for the privilege of serving as collector. The object and policy of the statute was to be achieved, only by exciting the rivalry and competition of men seeking this privilege. This competition was to be excited by calling by advertisement for sealed and secret proposals. Each bidder, ignorant of what his rival was about to offer, would be under stimulus, to make a bid at the best rate to the town, which his judgment would sanction, as of profit to himself. Whatever made known to one bidder, the views and proposal of another, abated his stimulus, and tended to weaken rivalry and deaden competition. And when an agreement was made between bidders, to share in the acceptance of the offer of either, it is apparent that the competition must materially slacken. Each of these parties had intended to make a proposal on his own account, and it was after each knew of the other's intention that the agreement between them was proposed and entered into. Until it can be truthfully said, that men's actions will not be affected by a consideration of their self-interest, it cannot be maintained that the parties to this agreement were likely, after it was formed, to be as strong competitors as they were before. Such is the natural effect of agreements of this nature ; and it is for this reason, and not on account of the actual results upon the public or upon third persons, of particular contracts,that they are held void. It is because men with these agreements in their hands, and relying upon them for their gain, do not act toward the public and third persons as they would without them, under the stimulus of competing opposition. If Mallon had promised Atcheson a sum of money, if he would refrain from making any proposal, and Atcheson relying upon it, had made none, and then had sought to enforce the agreement, there can be no doubt that the law would have held the promise void.

And why ? Not out of any consideration for the parties to it, but because its effect was to remove Atcheson from the number of earnest bidders, and thus by lessening competition to detriment the public. And the agreement which was made, laying open to Mallon, just what was the judgment of Atcheson of a profitable bid, and removing in effect an interested rival, tended to affect Mallon's action. While Atcheson, confident that if Mallon succeeded it was also his own success, lost the impulse to a real competition with him. It seems beyond cavil that the agreement is obnoxious to the rule above stated, and such agreements courts refuse to enforce.

Perhaps there is nothing in the statute which would have prevented the parties making an avowedly joint proposal. Though the language of its second, third, and fourth sections, and the analogy of the laws for the collection of taxes, contemplate but one person as town collector. But a joint proposal, the result of honest co-operation though it might prevent the rivalry of the parties, and thus lessen competition, is not an act forbidden by public policy. Joint adventures are allowed. They are public and avowed and not secret. The risk as well as the profit, is joint and openly assumed. The public may obtain at least the benefit of the joint responsibility, and of the joint ability to do the service. The public agents know, then, all that there is in the transaction, and can more justly estimate the motives of the bidders and weigh the merits of the bid.

The order of the General Term should be affirmed, with costs to the respondent.

All the judges concurring, except PECKHAM and RAPALLO, JJ., who, not having heard the argument, did not sit.

Order affirmed and judgment final for the defendant.